```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


UNITED STATES OF AMERICA,       )
                                )
          v.                    )       1:15cr301 (JCC)
                                )
JEN SEKO,                       )
                                )
     Defendant.                 )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Jen Seko's ("Defendant" or "Seko") Motions *in Limine*. [Dkts. 385-87.] These motions ask the Court to exclude a variety of testimony and evidence. For the following reasons, the Court will rule on the various motions as follows.

### I. Background

A. <u>Factual Background</u>

Jen Seko is charged along with four other co-defendants with one count of conspiracy to commit mail fraud and wire fraud, five substantive counts of wire fraud, and five substantive counts of mail fraud. [Dkt. 254.] These charges arise out of an alleged nationwide "mortgage modification" fraud scheme that targeted homeowners. Ms. Seko in particular is charged with producing and sending mass mailings to homeowners at risk of foreclosure through her company, Seko Direct

1

Marketing. [Dkt. 254, ¶ 2.] Trial is scheduled to begin on February 13, 2017.

    B.   <u>Procedural Background</u>

Defendant filed the instant motions *in limine* on December 2, 2016. [Dkts. 385-87.] The Government filed its opposition on December 13, 2016. [Dkts. 395-97.] Defendant replied on December 14, 2016. [Dkts. 408-10.] Oral argument was held on December 15, 2016. These motions are now ripe for disposition.

## II. Standard of Review

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41. Such evidentiary rulings "are entitled to substantial deference and will not be reversed absent a clear abuse of discretion." *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994); *see also United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006). "[The Court of Appeals] will find that discretion to have been abused only when the district court acted 'arbitrarily or irrationally.'" *Id*.

(quoting *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993)).

As a general matter, all relevant evidence is admissible unless there are constitutional, statutory, or rule-based exceptions preventing its admission. *See* Fed. R. Evid. 402. Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Consequently, what constitutes "relevant evidence" depends on the facts of the case, the nature of the claims, and the associated defenses to those claims.

One reason that relevant evidence may be excluded at trial is because of its prejudicial effect. *See* Fed. R. Evid. 403. Rule 403 of the Federal Rules of Evidence states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*

### III. Analysis

Defendant has made three motions *in limine* to exclude evidence and testimony at trial. The Court will now address

each of these motions in turn.

### A. Defendant Seko's First Motion *in Limine* to Exclude Victim Impact Evidence

Defendant argues that the Government should be prevented from putting on any evidence regarding the fact that the homeowners lost their homes to foreclosure, as well as any evidence of the personal, emotional, and financial impact of those losses, because such evidence is irrelevant to the question of guilt. (Def. Mot. at 3; Def. Rep., ¶ 1.) In support of this assertion, Defendant points out that proof of actual loss is not an element that must be established in order to convict someone of either type of fraud. (*Id.*) Furthermore, Defendant believes that such testimony would be so "highly prejudicial" that it would run the risk of becoming "the prominent feature of the trial." (*Id.* at 4.)

The Government claims that Defendant's request is "overly broad" and unsupported by case law. (Gov. Mem. in Opp. [Dkt. 395] at 1.) To begin, the Government clarifies that it does not intend to offer evidence or testimony regarding "truly collateral consequences" suffered by the victims of the charged fraud scheme, such as emotional and psychological trauma, stress-related health problems, strain on marital or other familial relationships, bankruptcy, low credit scores, or having to pay attorney's fees in connection with civil lawsuits. (*Id.*

4

at 4-5.) However, the Government asserts that the victims' vulnerable financial situations are "intrinsic to th[e] mortgage modification scheme." (*Id.* at 1.) For example, the fact that "victims were behind on their mortgage payments and facing foreclosure" is the reason that Ms. Seko and her co-defendants allegedly targeted them. (*Id.* at 5.) Moreover, Defendants allegedly promised mortgage modification assistance to these homeowners, but such support never materialized. (*Id.* at 6.) The fact that many victims then lost their homes "is central to the government's proof of the fraudulent objectives of this conspiracy, as well as the defendants' knowledge thereof." (*Id.* at 1-2.) Finally, the Government argues that the "sheer volume of victim payments" flowing through the conspiracy is evidence of the fraud and the co-conspirators' knowledge of the conspiracy's criminal objectives. (*Id.*) Collectively, the Government views this evidence as necessary to establish the defendants' criminal intent to defraud.

In the instant case, both mail fraud and wire fraud must be proven. The elements of mail fraud include: (1) a scheme or artifice to defraud; (2) participation by the defendant with the specific intent to defraud; and (3) use of the mail in furtherance of the scheme. 18 U.S.C. § 1341. The elements of wire fraud are identical, except that the defendant

5

must have transmitted communications by wire instead of the mail. 18 U.S.C. § 1343.

At least three other Circuits have previously held that "[p]roof of actual loss by the intended victim is not necessary" to convict someone of either crime. *See United States v. Copple*, 24 F.3d 535, 544 (3d Cir. 1994) (citing *United States v. Kelley*, 929 F.2d 582, 585 (10th Cir. 1990); *United States v. King*, 860 F.2d 54, 55 (2d Cir. 1988)). However, actual losses may still be relevant to the extent that such losses prove a material element of the offense. *See United States v. Cloud*, 680 F.3d 396, 402 (4th Cir. 2012) (allowing victim impact testimony when the defense argued that the victims were guilty of fraud themselves); *Copple*, 24 F.3d at 545 (allowing victim impact testimony to prove the defendant's specific intent). In fact, the Fourth Circuit has developed "a liberal policy . . . to allow the government to introduce evidence [regarding victims' losses] that even peripherally bears on the question of intent." *Copple*, 24 F.3d at 545 (internal citation omitted). If victim impact testimony is admitted, however, "district judges should exercise . . . wide discretion in imposing limits on [its use]." *Copple*, 24 F.3d at 545.

Here, the Government will be permitted, as Defendant concedes, to introduce evidence that the homeowners made

6

payments to mortgage assistance companies, as requested of them, and that mortgage modifications were not obtained on their behalf.  The Government will also be permitted to introduce relevant victim background evidence to explain how the alleged mortgage fraud scheme occurred, including the fact that the victims were targeted because they were facing foreclosure.  In addition, the Government may introduce evidence regarding the amount of payments victims made to the alleged conspiracy.  This victim impact evidence is relevant to the question of criminal intent.  All other victim impact evidence regarding "truly collateral consequences," however, including that some of the victims subsequently lost their homes, will be excluded.

Accordingly, the Court grants Defendant's first motion *in limine* to exclude victim impact evidence.  Both parties are cautioned to keep in mind during trial the limits on the introduction of victim impact testimony set out above.

> B. <u>Defendant Seko's Second Motion *in Limine* to Exclude Speculation or Opinion by Alleged Co-Conspirators and/or Witnesses as to Ms. Seko's Knowledge of the Alleged Criminal Nature of the Alleged Conduct</u>

Defendant's second motion *in limine* argues that the opinion testimony of lay witnesses as to Ms. Seko's knowledge of the alleged criminal nature of the mortgage fraud scheme should be excluded.  [Dkt. 386 at 3.]  Defendant worries that Joshua David Johnson ("Johnson"), one of Seko's co-defendants in the

7

original indictment, will testify that "Ms. Seko, at first, was under the impression that the company that Seko Direct Marketing was doing business with was a legitimate business . . . , but expressed his belief and opinion that Ms. Seko knew [it] was a criminal enterprise." [*Id.*, ¶ 2.] According to Defendant, Johnson's statement is not based on "any overt statements or actions observed by [him]" and is, therefore, a personal opinion. [*Id.*, ¶ 3.] Defendant claims that the Federal Rules of Evidence "bar testimony where a witness lacks personal knowledge" because such evidence is speculative. [*Id.*] Moreover, admitting such evidence would allow a lay witness to improperly opine on an ultimate issue in the case: whether Seko is innocent or guilty. [*Id.* at 4.]

In its opposition, the Government states that it does not intend to elicit any opinion testimony at trial that asks its witnesses to speculate about Defendant Seko's state of mind. (Gov. Mem. in Opp. [Dkt. 396] at 1.) Rather, the Government plans to introduce factual evidence only to establish her "guilty *mens rea*." (*Id.* at 1.)

Accordingly, the Court will grant Defendant's second motion *in limine*.

8

C. Defendant Seko's Third Motion *in Limine* to Exclude Testimony Regarding the Guilt of the Alleged Co-Conspirators

Defendant's last motion *in limine* argues that testimony from Postal Inspectors Gonzalez, Rikli, or Shen – meant to establish that Ms. Seko had been informed that Mr. Araya was part of a criminal enterprise and that he was engaged in a scheme to defraud – should be excluded. [Dkt. 387, ¶ 8.] If the agents do not testify, Defendant claims that their Memorandums of Interview are impermissible hearsay for which there is no exception under the Federal Rules of Evidence. [*Id.* at 4.] If the agents do testify, Defendant asserts that their testimony would constitute "impermissible bolstering"[1] as it would allow the Government to essentially offer into evidence an opinion about the alleged co-conspirators' guilt. [*Id.* at 4-5.] Either way, Defendant argues that this evidence would invade the province of the jury and render an impermissible lay opinion regarding the ultimate issue of criminality in this case. [*Id.* at 5.] Defendant believes that such evidence would not only be unhelpful to the jury, but also "exceedingly prejudicial." [*Id.* at 7.]

The Government argues that the evidence and testimony regarding the Postal Inspectors' conversations with Defendant

---

[1] The Fourth Circuit has defined bolstering as "an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997).

9

will not be offered to prove the truth of the matter asserted or to opine on the ultimate question of Defendant's guilt. (Gov. Mem. in Opp. [Dkt. 397] at 1.) Instead, these statements will be offered to show their effect on the Defendant and to prove her knowledge of the fraudulent objectives of the conspiracy. (*Id.*)

Federal Rule of Evidence 801 defines hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). There is an absolute bar on the admission of hearsay unless an exception or exclusion applies. *See* Fed. R. Evid. 802. Certain statements do not qualify as hearsay, however. For example, statements offered to prove the effect of the statement on the listener, as well as statements offered to prove a person's state of mind, are not hearsay and are, therefore, admissible. *See United States v. Martin*, 2016 WL 4928669, at *5 (4th Cir. Sept. 16, 2016); *United States v. Leake*, 642 F.2d 715, 720 (4th Cir. 1981).

Given the purposes for which the Postal Inspectors' evidence and testimony will be offered at trial, the Court will deny Defendant's third motion. Mindful of Defendant's concerns about the prejudicial nature of this evidence and testimony, the Court will issue to the jury a limiting instruction.

## IV. Conclusion

For the foregoing reasons, the Court rules as follows:

(1) Defendant's Motion *in Limine* to Exclude Victim Impact Evidence is **GRANTED;**

(2) Defendant's Motion *in Limine* to Exclude Speculation or Opinion by Alleged Co-Conspirators and/or Witnesses as to Ms. Seko's Knowledge of the Alleged Criminal Nature of the Alleged Conduct is **GRANTED**; *and*

(3) Defendant's Motion in Limine to Exclude Testimony Regarding the Guilt of the Alleged Co-Conspirators is **DENIED.**

An appropriate Order will issue.

/s/
December 20, 2016            James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE