UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA         CASE NO: 1:15-cr-000301-JCC

v.

JEN SEKO
_____/

# DEFENDANT SEKO'S <u>RENEWED</u> THIRD MOTION IN LIMINE
## (TESTIMONY REGARDING GUILT OF ALLEGED CO-CONSPIRATORS)

  COMES NOW the Defendant, Jen Seko, by and through her undersigned counsel, and hereby respectfully renews her Third Motion in Limine (Testimony Regarding Guilt of Alleged Co-Conspirators) (Doc. 387), requesting the Court to enter an order excluding from the Defendant's trial any evidence or testimony by witnesses and/or argument, concerning <u>hearsay opinion testimony of government agents</u> regarding the guilt of alleged co-conspirators and co-defendants, and in support thereof, states as follows:

  1. On December 2, 2016 the Defendant filed her Third Motion in Limine (Testimony Regarding Guilt of Alleged Co-Conspirators). Doc. 387. That motion sought a ruling from the Court excluding the hearsay opinion testimony of Postal Inspectors, that, on April 1, 2013, they told Ms. Seko, in substance, they couldn't tell Seko her how to <u>run her business</u>, but she needed to understand that her participation in the processing and mailing of solicitation mailers for Mr. Araya's company, ABC Marketing, <u>could</u> be considered as <u>conspiring with Araya to defraud</u>.

  2. On December 20, 2016, the Court issued an Order denying the Defendant's Third Motion in Limine, concluding such evidence was admissible to demonstrate the "effect" it had on Ms. Seko. Doc. 419. However, as this Renewed Motion will demonstrate, the government has now

illuminated their <u>true</u> purposes in seeking admission of this hearsay opinion. They seek to use that evidence for the improper purposes of (1) establishing, out of whole cloth, through nothing more than the hearsay opinion of the case agent, the guilt of Ms. Seko they can not establish from <u>any</u> of their substantive witnesses – because none of them will testify they told Ms. Seko they were defrauding homeowners, and (2) that, by sending any more such mailings, Ms. Seko would automatically become part of the very "conspiracy with Araya and others to defraud those homeowners." Doc. 475 at 3.

3. Subsequently, the government filed their Government's Motion to Exclude Defendant Seko's Proposed Expert Witness (Doc. 475) ("Motion to Exclude Expert").

4. The government's Motion to Exclude Expert devotes an entire two pages (pages 2 and 3) explaining their theory of prosecution of Ms. Seko. Whereas those *ad hominem* comments are entirely irrelevant to the issue of the scope of Mr. Birnbaum's testimony, their recitation further illuminates <u>why</u> the government absolutely needs to have the prejudicial hearsay opinion "warnings by law enforcement agents" (Motion to Exclude Expert at 2) in their arsenal of proof, if they are to have any prayer of seeking to convict Ms. Seko (albeit by improper means).

5. Accepting the government's argument that this testimony was properly admissible to show the "effect" it had on Ms. Seko, this Court previously denied our motion in limine (Doc. 419).

6. However, the Court is respectfully requested to reconsider that ruling, and carefully examine (1) what the government claims to be the very narrow universe proof against Ms. Seko, as specified at page 2 of their Motion to Exclude Expert, (2) as well as the true purpose they now announce for their improper use of this hearsay opinion of their case agent.

7.  We will first examine the narrow universe proof against Ms. Seko, as specified at page 2 of their Motion to Exclude Expert. The government lists only three (3) means to convict Ms. Seko. We will analyze those three means in paragraphs 8-10 below.

8.  #1 – "Interaction with her co-conspirators"

   a.  This "interaction" claim is entirely misleading. The government has not disclosed a <u>single</u> MOI in which any of the true "back-room" conspirators ever informed Seko they were <u>defrauding homeowners</u>. Indeed, a number of those back-room participants have told the government they thought the operations were <u>legitimate</u>, and even those who thought it wasn't, explained to the government how they <u>concealed</u> the nature of their fraud from others (obviously including Seko).

   b.  In short, to the knowledge of undersigned counsel, the government does not have a single witness who will say they told Seko they were cheating homeowners when the homeowners called the back room.

   c.  Thus, this nebulous claim of "interaction with her co-conspirators" is both meaningless and without merit.

   d.  Respectfully, the government should be required to confirm counsel's understanding they are entirely without proof of a <u>single witness</u> who will assert Ms. Seko was informed of the existence of fraud on homeowners (other than the boot-strap opinion of the postal inspectors when they spoke to Ms. Seko in 2013).

9.  #2 – "Complaints received by victims"

   a.  Ms. Seko, in late March 2013, received a complaint from one of her <u>clients</u> – who was also another direct marketing client offering mortgage modification assistance. When

postal inspectors visited Ms. Seko on April 1, 2013, they asked her, and she agreed to, tape record a conversation with Mr. Araya about that <u>single</u> customer (Kenneth Coull) about whom Ms. Seko had heard from her <u>other</u> client (not from Mr. Coull, the homeowner). Incredibly, Mr. Araya, in a 35 minute secretly recorded conversation (about which, of course, since it was clandestine) he had no knowledge, informed Ms. Seko they had actually stopped the foreclosure on Coull's house and had obtained for him the mortgage modification. Nevertheless, at Seko's request, Araya actually <u>refunded</u> Coull's money.

    b.  At the time of her November 5, 2015 arrest, the postal inspectors informed Ms. Seko that Coull was the <u>only</u> "victim" who ever received a refund – which was due solely to the cooperation Ms. Seko provided to the postal inspectors 2 ½ years earlier.

    c.  Thus, the government has a <u>single</u> complaint (not from a homeowner victim, but from a client of Seko's), which <u>Seko</u> brought to <u>their</u> attention – and <u>fixed</u>.

    d.  Moreover, it is endemic to any direct mailing business that there will be some complaints.

    e.  In short, this component of the government's alleged "proof" demonstrates the <u>innocence</u> of Ms. Seko – not her guilt.

  10.  #3 – "Warnings by law enforcement agents"

    a.  This is the "caution" that postal inspector gave to Ms. Seko on April 1, 2013 – four years ago. As can be seen, but for this boot-strap warning, the government would have <u>no proof whatsoever</u> of any report to Ms. Seko of "fraud" being committed by the mortgage modification defendants in this case – which is why they have sought so hard to convince this Honorable Court this evidence is admissible.

b. It is indeed a clever (albeit unfair) way to obtain a conviction. Send your federal agent out, warn a businesswoman that if she's dealing with Mr. X, she is committing a crime (notwithstanding her total lack of knowledge of him committing any fraud), then indict her, and use that hearsay opinion of an agent (clearly misstating the law) to convict.

c. Of course, this solitary evidence is all the more prejudicial, for reason Ms. Seko honored this caution and notified Mr. Araya, a mere two days later, she could no longer mail for him, and, indeed, refunded the $12,000 he had deposited for the next mailing. Thus, the "effect" was that Ms. Seko stopped mailing for Mr. Araya, thus further demonstrating the "effect" basis claimed by the government is illusory, and just a pretext to put into evidence the testimony of their case agent, for the purposes of telling the jury Ms. Seko was part of the charged conspiracy.

11. In addition to the government's unfair efforts to convict Ms. Seko, using the bootstrap hearsay opinion of their own case agent, in the absence of any direct evidence from the government witnesses, as noted above, the government has now revealed the true purpose for their improper use of this hearsay opinion of their case agent.   [Alex ¶¶12 - 16]

12. Indeed, of even greater concern, is the latest revelation by the government, in a written pleading filed with this Court, reporting the impermissible argument they intend to advance, with regard to this hearsay opinion evidence, contrary to the "effects" position previously taken by the government in responding to Ms. Seko's Third Motion *in Limine*.

13. In the United States' Response in Opposition to Defendant Jen Seko's Third Motion *in Limine* (Testimony Regarding Guilt of Alleged Co-Conspirators) (Doc. 397), the government assured this Court the evidence addressed in Ms. Seko's motion would be introduced "solely to establish the defendant's <u>knowledge</u> and the <u>effect</u> of those statements had on the defendant as the

5

listener." Doc. 397 at 4 (emphasis added). As noted, this Honorable Court determined the "effect" basis was sufficient to deny Seko's motion. However, it remains essential that an analysis of the "knowledge" basis proffered by the government be further examined, particularly now, in light of the government's recent admissions as to the true purposes of this case agent hearsay.

14. As to the "knowledge" issue, the "knowledge" element essential to this prosecution is Ms. Seko's knowledge that Mr. Araya was engaged in defrauding homeowners. That knowledge cannot properly be formed by the self-serving claims of the federal case agent. That knowledge must be formed, if at all, by "knowledge" Ms. Seko acquired in her dealings with Araya. By this hearsay testimony, the government will entirely eliminate one of the elements of proof of conspiracy, and use the opinion of the case agent to create the very knowledge their witnesses and documents are supposed to establish. That hearsay opinion is all the more prejudicial, since Ms. Seko made an undercover recording, at the request of that case agent, of Mr. Araya, which was incredibly exculpatory, including assurances that Mr. Araya was obtaining a mortgage modification for the homeowner (Coull) who was the subject of that call, and had stopped his home from going into foreclosure. If any thing, that undercover call demonstrated Ms. Seko's lack of knowledge of that Mr. Araya was engaged in defrauding homeowners – contrary to the hearsay opinion of the case agent.[1]

15. Ironically, the government expresses concern that Seko expert Mr. Birnbaum might

---

[1] We are not here to litigate whether Mr. Araya was honest with Ms. Seko in that call. However, what we do request is that the government be restricted to the evidence customarily required to prove their cases, that is, the testimony of actual fact witnesses, and the admission of documents – not the hearsay opinion of the case agent, that was demonstrably proven incorrect (at least to the knowledge of Ms. Seko) with the 35 minute undercover recording the agent had Ms. Seko make of Mr. Araya.

testify to her state of mind, but they want to use their case agent to implant "knowledge" of a conspiracy with Araya in Ms. Seko's mind, just based on her own hearsay opinion.

16. In short, the government makes an unprecedented request to seek to convict Ms. Seko of participating in a conspiracy with Mr. Araya, by telling her that, if she does mail for him, she <u>is</u> in that conspiracy.

17. That improper purpose is now clearly manifested in the government's Motion to Exclude Defendant Seko's Proposed Expert Witness, Robby Birnbaum, Esq., (Doc. 475). Therein, the government now contends that, if Ms Seko "continued to send such mailings, she would be <u>exposing herself to potential criminal liability as part of a conspiracy with Araya and others to defraud those homeowners</u>." Doc. 475 at 3 (emphasis added). This statement now illuminates the government's true purposes, contrary to the government's prior assertions.

18. Precisely as was the concern expressed in Ms. Seko's original motion, the government intends to use the agent's statement as an <u>independent theory of prosecution</u>.

19. Additionally, it is a misstatement of the law, and highly misleading, to suggest that a government agent can provide conclusory opinion allegations to an individual uninvolved in a conspiracy, and through those statements, make them a part of said conspiracy.

20. Respectfully, given the government's clear illumination of the absence of substantive proof in their case, and their true (and improper) intent on using this evidence, coupled with the absence of any relevance regarding their "effect" basis, it is requested that the Court reconsider its prior ruling (Doc. 419) and preclude the government from putting in this prejudicial hearsay opinion testimony of the postal inspector case agent.

21. The government continues to explicate their theory of prosecution, but does so by

7

misstating the record. In any event, at least, if restricted to proof of facts, rather than the hearsay and prejudicial and biased opinion of the postal inspector, Ms. Seko will have a fair opportunity at trial to demonstrate the government has misreported those facts.

## MEMORANDUM OF LAW

In support of this Renewed Motion, Ms. Seko adopt the Memorandum of Law filed in support of her original motion, as well as that filed in support of her Reply to the United States' Response (Doc. 397) in Opposition to Seko's Third Motion in Limine (Testimony Regarding Guilt of Alleged Co-Conspirators) (Doc. 387) (Doc. 410), and will not trouble the Court by reproducing those arguments herein, with one exception. Since the Court's Order denying the Defendant's Third Motion in Limine concluded such evidence was admissible to demonstrate the "effect" it had on Ms. Seko (Doc. 419), counsel will reiterate Ms. Seko's prior analysis of that claim.

The government asserted the case agent hearsay opinion statements are admissible "to show their effect (or lack thereof) on the defendant." However, as can now be seen, that is not the true purpose for which the government seeks to admit this testimony. Rather, they seek it to prove Ms. Seko was a part of their charged conspiracy, and artificially plant "knowledge" of the existence of a conspiracy in the mind of Ms. Seko, through the self-serving opinion of the case agent.

In support of that prior "effect" claim, the government cited no exception to the hearsay rule allowing testimony – because it has an "effect" on the listener – let alone an "effect" created some four years ago – let alone when that "effect" led Ms. Seko to promptly (within two days) terminate mailings with Mr. Araya.

Indeed, no hearsay exception exists to allow a hearsay opinion of the government investigator on the ultimate issue – based on its "effect" on Ms. Seko.

8

Again, this purported basis for admissibility is simply another simple and convenient way for the government to seek to win their case, and establish Ms. Seko's criminal knowledge – based on the self-serving opinion of the case agent – knowing they possess no substantive evidence.

The government asserted the cases of *United States v. Martin*, __ F.App'x __ 2016 WL 4928669 (4th Cir., Sept. 16, 2016), and *United States v. Leake*, 642 F.2d 715 (4th Cir. 1981) support their "effect" argument. Response (Doc. 397) at 4. Respectfully, those cases most certainly do not support their position. In each of those cases, the <u>defendant</u> sought to put in his <u>own</u> statements, to prove why that defendant was not guilty of the charge, or was operating with innocent intent. Clearly, these cases do not stand for the proposition the <u>government</u> can have their case agent tell a person they are, or will be, committing a crime, and then use that self-serving opinion to convict the defendant.

Accordingly, Ms. Seko respectfully requests the Court to enter an order excluding the admission of any such evidence, testimony, and/or argument. As can be readily seen, with the government's acknowledgment of the lack of evidence in their case, admission of this statement by the postal inspectors will be highly prejudicial. Moreover, they are not probative – since Ms. Seko notified Mr. Araya, two days later, she would no longer send out his mailers.

WHEREFORE, Ms. Seko respectfully requests the Court to grant this Renewed Third Motion in Limine.

Respectfully submitted,

**FALLGATTER & CATLIN, P.A.**

  /s/ Curtis S. Fallgatter
Curtis S. Fallgatter, Esq.
Florida Bar No: 0213225

Alex King, Esq.
Florida Bar No: 86034
200 East Forsyth Street
Jacksonville, Florida 32202
(904) 353-5800 Telephone
(904) 353-5801 Facsimile
fallgatterlaw@fallgatterlaw.com Email
Attorneys for Defendant

**JOHN MACHADO LAW OFFICE**

  /s/ John L. Machado
John L. Machado
VSB No: 36156
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail to: (1) Samantha P. Bateman (samantha.bateman@usdoj.gov) and Ryan Faulconer (Ryan.Faulconer2@usdoj.gov), Assistant U.S. Attorneys, United States Attorney's Office, 2100 Jamieson Ave., Alexandria, VA 22314, (2) John Machado, Esq., Law Office of John Machado, 503 D Street NW, Ste. 310, Washington, D.C. 20001, johnlmachado@gmail.com, and (3) all counsel of record, this 4th day of April, 2017.

        /s/ Curtis S. Fallgatter
        ATTORNEY

75495