IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,       )
                                )
            v.                  )       1:15cr301 (JCC)
                                )
JEN SEKO,                       )
                                )
        Defendant.              )

**M E M O R A N D U M     O P I N I O N**

This matter is before the Court on Defendant Jen Seko's
("Defendant" or "Seko") Post-Verdict Motion for Judgment of
Acquittal. [Dkt. 566.] Seko's Motion for New Trial and Motion for
Arrest of Judgment[1] are also before the Court. [Dkt. 565.] Finally,
Seko's Notices of Supplemental Authority [Dkts. 572, 573] and Notice
of Adoption of Henderson's Second Motion for New Trial [Dkt. 576]
have been received and considered. For the following reasons, the
Court will deny Defendant's motion for judgment of acquittal and
motion for new trial.

## I. Standard of Review

A.  Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c) provides, in
relevant part, "if the jury has returned a guilty verdict, the court

---

[1] Other than including "Motion for Arrest of Judgment" in the title of this motion,
and alleging that her Memorandum of Law will address Federal Rule of Criminal
Procedure 34, Defendant fails to include anything to support the proposition that
this Court was without jurisdiction over the charged offenses. It is not the
province of this Court to divine counsels' arguments for them. Accordingly, the
Court declines to address Defendant's Rule 34 motion further. To the extent a
ruling on the motion is necessary, it is hereby denied.

may set aside the verdict and enter an acquittal." Where such a
motion is based on "insufficiency of the evidence, the conviction
must be sustained if the evidence, when viewed in the light most
favorable to the Government, is sufficient for any rational trier of
fact to find the essential elements of the crime beyond a reasonable
doubt." *United States v. Romer,* 148 F.3d 359, 364 (4th Cir. 1998).

When ruling on a Rule 29(c) motion, "the trial court
should only consider the sufficiency of the evidence presented in
that trial, not what evidence is likely to be admitted or excluded
in a future trial." *United States v. Mackins,* 32 F.3d 134, 138-39
(4th Cir. 1994). The Government must be allowed "the benefit of all
reasonable inferences from the facts proven to those sought to be
established." *United States v. Tresvant,* 677 F.2d 1018, 1021 (4th
Cir. 1982) (citations omitted). "Furthermore, neither the district
court nor the appellate court should consider a witnesses'
credibility, but must assume that the jury resolved all
contradictions in favor of the Government." *Romer,* 148 F.3d at 364.

B.   <u>Motion for New Trial</u>

Federal Rule of Criminal Procedure 33 provides, in
relevant part, "the court may vacate any judgment and grant a new
trial if the interest of justice so requires." Fed. R. Crim. P. 33.
The Fourth Circuit instructs that "a trial court should exercise its
discretion to award a new trial sparingly, and a jury verdict is not
to be overturned except in the rare circumstance when the evidence

'weighs heavily' against it." *United States v. Smith,* 451 F.3d 209, 216-17 (4th Cir. 2006) (citations omitted). Although while addressing a Rule 33 motion a district court "is not constrained by the requirement that it view the evidence in the light most favorable to the government," such a motion should only be granted when "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *United States v. Arrington,* 757 F.2d 1484, 1485 (4th Cir. 1985).

## II. Analysis

A.   Motion for Judgment of Acquittal

        *i. Count One: Conspiracy*

        Defendant first argues that this Court improperly admitted "the self-serving hearsay legal opinion of Postal Inspector Gonzalez . . . to establish (1) the existence of the charged fraud and conspiracy, (2) Ms. Seko's 'knowledge' of the fraud and conspiracy, and (3) Ms. Seko's complicity in the fraud and conspiracy." [Dkt. 566, ¶ 2 (hereinafter, "Def.'s Mot.").] Defendant then instructs the Court to review its Motion for a New Trial and Arrest of Judgment [Dkt. 565] for further argument and explanation. *Id.*, ¶¶ 2-3. As a result, the Court will address those arguments at length in Section II.B below. For now, the Court will simply note its continued ruling that these statements were not hearsay and were, therefore, admissible. *See United States v. Martin*, 2016 WL

4928669, at *5 (4th Cir. Sept. 16, 2016); *United States v. Leake*,

642 F.2d 715, 720 (4th Cir. 1981).

The remainder of Defendant's argument on Count One focuses on the sufficiency of the evidence. First, Defendant contends that Postal Inspector Gonzalez's testimony was the only proof at trial regarding Seko's knowledge of the charged conspiracy. Def.'s Mot., ¶ 3. She asserts that no co-conspirators testified that they ever told her that they were defrauding homeowners, *id.,* ¶ 6, and that she was only aware of a single customer complaint,[2] which she helped to rectify, *id.*, ¶ 7. Second, Seko alleges that after the Postal Inspectors warned her about continuing to do business with Sammy Araya, she immediately stopped.[3] *Id.*, ¶ 8. Finally, Defendant argues that the evidence at trial established that the mailers themselves contained no false representations, that no fraud occurred until the victims called the toll-free numbers listed on the mailers for help, and that she did not know about the false representations being made by the co-conspirators who answered those calls.[4] *Id.*, ¶¶ 11-15. The Court disagrees with each of Seko's assessments.

---

[2] Evidence admitted at trial directly rebuts this claim, as Defendant Seko emailed "Matt Kelly" to say that she hoped they would not get "many complaints and blame while using the same letter that received complaints before." Gov't Exh. 33-102.
[3] Defendant later concedes in her reply brief that she continued communicating with Araya after the April 2013 caution. Def.'s Repl. [Dkt. 582], ¶¶ 25-27; *see also* Def.'s Repl. [Dkt. 581] at 8-10.
[4] Defendant made several additional arguments, including that she asked Araya lots of questions, presumably to get to the bottom of the Postal Inspectors' warning about him; did not shut down her business or destroy her business records after the Postal Inspectors' visits; and somehow secured "immunity" from the Postal Inspectors with regards to continuing to send out the mailers. Def.'s Mot., ¶¶

During nearly two weeks of trial, the Government presented sufficient evidence for a reasonable jury to have concluded that Defendant Seko joined the conspiracy, that she took actions in furtherance of that conspiracy, and that she did so with the knowledge that victim homeowners were being defrauded.  Given the substantial amount of evidence presented at trial, the Court will not undertake to summarize every single piece of evidence that supported Seko's conviction.  Rather, the Court will focus its analysis instead on the strongest pieces of evidence that could have led a rational jury to find Seko guilty beyond a reasonable doubt.

To begin, Defendant Seko's co-conspirators testified at trial that Ms. Seko had knowledge of the fraudulent scheme or, at the very least, that she was deliberately ignorant to its objectives.  For example, Joshua Johnson testified that the conspirators changed the names of their purported business frequently, which was confirmed by the documentary evidence. Johnson and Sabrina Rafo testified that Seko was paid solely in cash and cashier's checks.  Nicholas Estilow testified about a conversation that Seko and Araya had in a bar where she expressed concern about her name being tied to the mailers.  Johnson also testified that Seko discussed the Postal Inspectors' visits with her

18, 20-23.  The first two claims amount to nothing more than factual disputes, which were properly decided by the jury.  The jury could have reasonably inferred that such arguments were not credible, in light of the other evidence establishing Seko's knowledge of the fraudulent scheme.  Additionally, Defendant's final assertion—that Postal Inspector Gonzalez somehow gave her "immunity" with respect to the content of the mailers—is not supported by case law, testimony, or documentary evidence.

co-conspirators after those visits occurred.  Based upon this
testimony, a reasonable trier of fact could have concluded that Ms.
Seko had knowledge of the criminal conspiracy, or was at least
deliberately ignorant of its existence, even without having ever
considered the effect of the Postal Inspectors' April 2013 caution
on her state of mind.

Furthermore, evidence admitted at trial unequivocally
contradicts Defendant's argument that she immediately stopped doing
business with Araya in April 2013.  Johnson testified that Seko was
aware that his two aliases ("Simon Andrews" and "Matt Kelly") were
both working for Araya.  Although Johnson initially attempted to
hide his affiliation with Araya from Seko, he later told her that he
wanted to do the same thing as Araya, including using the same
mailer.  Johnson also testified that he did not try to disguise his
voice when he switched aliases and that, when he met Seko in person
as "Matt Kelly," she laughed with him about how he had previously
used a different fake name ("Simon Andrews") to do business with
her.  Additionally, Defendant Seko's own email records show that she
knew she was continuing to conduct business with Araya.  In
September 2013, for example, she sent an email to Araya in reference
to "Matt's job" and the number of "pieces" of mail she was sending
out for him.  Gov't Exh. 33-93.  Defendant Seko also exchanged
multiple emails with Araya regarding mailers being sent on his
behalf, including "counts" of potential victims, draft mailers,

details of mailing campaigns with tracking links, and the
possibility of setting up new postal service permits.  Gov't Exhs.
33-93, 33-95, 33-101, 33-108, 33-111.  During the fall of 2013,
Defendant Seko received voicemails from Araya regarding these
mailing campaigns and how he should deliver payment to her.  Gov't
Exhs. 33-117 through 33-121.  Evidence seized during the June 2014
search of Seko's business also could have been considered by the
jury as evidence of her guilt.  *See, e.g.,* Gov't Exhs. 33-46
(spreadsheet file containing victim Paul H.'s personal information);
81-1 (mailer sent to Paul H. in May 2013); 34-1 (a document
explaining how Defendant Seko pulled victim data from "RealtyTrac"
on behalf of "Sammy" and his company, ABC Marketing); and 34-57
(handwritten notes listing contact information for "Sammy" and
mentioning "misleading" mailers).  Finally, Defendant Seko helped
Araya to open a new bulk mailing permit, Permit 78, in another
person's name (co-defendant Michael Henderson) in September 2013.
Gov't Exh. 40-2.  This permit was then used to send mailers until
April 2015, Gov't Exh. 40-4, which included mailers sent on behalf
of "Matt Kelly," Gov't Exh. 33-112, and one of Mr. Araya's aliases,
"Paul Brown,"[5] Gov't Exh. 33-113.

Finally, testimony and documentary evidence established
that the mailers themselves contained false representations.

---

[5] Emails from Defendant Seko's computer establish that she knew "Paul Brown" was
Araya.  She emailed him a list of prospective victim "counts" at his
abcinctv@gmail.com address in July 2013, stating: "For paul brown . . . sell,
sell, sell! Lol."  Gov't Exh. 33-95.

Danielle Johnson-Kutch testified, for example, that there were no geographic limitations under the Home Affordable Modification Plan ("HAMP"), although the mailers that Seko sent out falsely claimed that "we are only limited to a small number of approvals" or "participants in this area." Gov't Exhs. 81-1, 70-2. Moreover, Johnson and Estilow testified that Seko provided her co-conspirators with the victims' contact information *after* sending out the initial mailers, even though the mailers stated that "we have been trying to reach you without success" and included a case manager and case number. Gov't Exhs. 41-8, 34-36. The Government also presented evidence of spreadsheets found on Defendant Seko's computer, which included thousands upon thousands of rows of potential victims. Although Defendant Seko clearly disputes whether any of the statements in her mailers were false and, if they were, whether they were material, those kinds of factual determination are—and were—properly reserved for the jury. The fact that jurors resolved these factual questions against Defendant Seko, finding her guilty of conspiracy, is entirely reasonable.

Given the substantial weight of the evidence at trial, and Rule 29(c)'s requirement to view that evidence in the light most favorable to the Government, the Court holds that a reasonable trier of fact could have found Defendant Jen Seko guilty of conspiracy beyond a reasonable doubt. Accordingly, the Court denies Defendant's motion for a judgment of acquittal on Count One.

## ii. Counts Two-Six (Wire Fraud) and Counts Nine-Eleven (Mail Fraud)

Defendant's next argument is that she should be acquitted of the eight substantive counts of mail fraud and wire fraud for which she was convicted.[6] As pointed out by the Government, Defendant's arguments dealing with these substantive counts largely repeat her prior arguments with respect to the conspiracy count, namely that she did not know "Matt Kelly" was working with Araya, that she stopped mailing for Araya in April 2013, and that the Government failed to prove that the mailings she sent later in the fall of 2013 were for Araya's mortgage modification companies. Def's Mot., ¶ 29. In addition, Defendant makes a series of arguments about how she did not personally commit the substantive offenses and, thus, should not have been held liable for them. *Id.*, ¶¶ 30-33.

As a preliminary matter, it is important to remind Defendant Seko about the *Pinkerton* doctrine, which imposes vicarious liability on a co-conspirator for any substantive offenses committed by other members of the conspiracy when those offenses take place during and in furtherance of the conspiracy. *United States v. Aramony*, 88 F.3d 1369, 1380 (4th Cir. 1996) (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)). Consequently, as long as the jury could have reasonably found beyond a reasonable doubt that one of Defendant Seko's co-conspirators committed the

---

[6] To the extent that Defendant's motion relies on evidence that was never admitted at trial, the Court declines to consider it. *Mackins,* 32 F.3d at 138-39.

substantive offenses during and in furtherance of the conspiracy, that the offenses were committed at a time when Defendant Seko was a member of the conspiracy, and that the acts were reasonably foreseeable to her, she can most certainly be held criminally liable for them, even if she did not personally carry them out. With that framework in mind, the Court now turns to a discussion of each substantive count.

### 1. Counts Two and Three (Victim David A.)

Counts Two and Three deal with two wire communications sent to David A. in early April 2013. At trial, David A. testified that before exchanging these communications with Seko's co-conspirators, he received a mailer that falsely promised him mortgage modification assistance. He did not retain a copy of this mailer, but his personal information was later found in a spreadsheet of homeowners facing foreclosure on Seko's computer. *See* Gov't Exhs. 33-51, 33-51A.

Defendant's main argument against her convictions for these two counts is directly tied to her ability to know exactly what the jury was thinking. Specifically, Defendant asserts that the jury convicted her of conspiracy based solely upon the caution she received from Postal Inspector Gonzalez on April 1, 2013. Def.'s Mot., ¶ 30. Because her mailer was sent to David A. prior to that date, her theory goes, she cannot possibly be held criminally

liable for the wire fraud that took place in early April 2013.[7] *Id.*
Moreover, Seko claims that her convictions for Counts Two and Three
are inconsistent with her acquittals for Counts Seven and Eight,
which likewise involve conduct that took place prior to April 2013.
*Id.*

As Defendant is well aware, the jury in this case returned
a general verdict for all eleven counts in the Superseding
Indictment. They made no specific factual findings about when they
determined that Seko had joined the conspiracy. As the Fourth
Circuit has previously acknowledged, because "discerning what facts
were 'necessarily determined' in a general jury verdict is no easy
task, '[c]ourts have always resisted inquiring into a jury's thought
processes." *United States v. Yearwood*, 518 F.3d 220, 229 (4th Cir.
2008) (citing *United States v. Powell*, 469 U.S. 57, 67 (1984)). The
Court likewise declines to speculate about the jury's conclusions
today.

Additionally, as pointed out by the Government,
Defendant's "inconsistent-verdicts argument is baseless." *United
States v. Louthian*, 756 F.3d 295, 305 (4th Cir. 2014). "[I]t is
well-settled that a defendant 'cannot challenge his conviction
merely because it is inconsistent with a jury's verdict of acquittal
on another count.'" *Id.* at 305 (citing *United States v. Thomas*, 900
F.2d 37, 40 (4th Cir. 1990) (internal citation omitted)). "Indeed,

---

[7] This theory ignores, of course, the basic tenets of the *Pinkerton* doctrine, which
would hold her responsible for the acts of her co-conspirators who perpetrated the
wire fraud after she joined the conspiracy.

an inconsistent verdict can result from mistake, compromise, or lenity, and a jury could just as likely err in acquitting as in convicting." *Id.* Accordingly, this Court rejects Defendant Seko's argument that she should be acquitted on Counts Two and Three, based on her acquittal on Counts Seven and Eight.

Given that there was sufficient evidence to convict Defendant Seko of conspiracy, that Government witnesses and documentary evidence established that Seko targeted David A. with an initial mailer, and that Seko's co-conspirators sent him the fraudulent wire communications at issue in Counts Two and Three, the Court hereby finds that a rational jury could have convicted Defendant Seko of the substantive offenses of wire fraud in Counts Two and Three. Her motion for judgment of acquittal is therefore denied.

2. Counts Four and Five (Victim Gladys W.)

Defendant next challenges her convictions on Counts Four and Five, which deal with wire communications sent to victim Gladys W. Seko bases this challenge on two arguments. First, she argues that she did not send out the mailers in question, as she was working for "Matt Kelly" and not Araya in August and September 2013. Def.'s Mot., ¶ 31. Second, Seko claims that the postal inspectors never warned her about "Matt Kelly," and since the jury verdict relied solely upon the inspectors' warnings about Araya to determine

when Seko joined the conspiracy, she cannot be convicted of defrauding Gladys W.  *Id.*

As the Court already explained at length above, substantial evidence was presented at trial from which a rational jury could have concluded that Seko continued to do business with Araya after April 2013.  The Government presented evidence that she knew that "Matt Kelly" worked for Araya, as well as that she continued to send out mailers for Araya himself during the fall of 2013.  *See* Gov't Exhs. 33-93, 33-102.  The Government also presented evidence to link Seko directly to the mailer that Gladys W. received, as her personal contact information was found in a spreadsheet in Defendant Seko's computer.  Gov't Exh. 33-44. Moreover, for all of the reasons stated in Section II.A.ii.1 above, the Court will not accept Defendant's invitation to engage in impermissible speculation regarding the jury's general verdict in this case.  The Court therefore denies Defendant's request for a judgment of acquittal on Counts Four and Five.

### 3. Count Six (Victim Daniel T.)

Defendant also challenges her conviction on Count Six because it involves a mailer that she claims she did not issue. Def.'s Mot., ¶ 32.  Seko alleges that she stopped working for Araya around January 2014, and the mailer in question is dated June 4, 2014.  *Id.*  In further explaining why this mailer was not sent by Seko, Defendant points to evidence that was never admitted at trial.

*Id.* (alleging that the mailer's ID Number is not a Seko reference code, there is no Intelligent Mail Barcode within the address block, and there is no fine print near the name that would indicate the tray sorting codes Seko used internally).  The Court declines to consider such evidence, and focuses its inquiry instead on the testimony and documents properly admitted.

To begin, although there was some conflicting testimony at trial, there was still sufficient evidence for the jury to conclude that Seko continued to send mailers for the conspiracy after January 2014.  It is true that Johnson testified that Roscoe Umali's team briefly experimented with using another method of sending out mailers in early 2014, as Seko had become increasingly unreliable.  But Estilow also testified that he observed a conversation between Araya and Seko during that same time period, where he overheard Seko telling Araya that she was concerned about the mailers being traced back to her company.  To buttress the Government's theory that Seko continued to research potential homeowners and target them with initial mailers for her co-conspirators, the Government introduced spreadsheets found on Seko's computer in June 2014.  *See* Gov't Exhs. 33-54 (spreadsheet file containing Kathleen K.'s personal information); 87-1 and 87-5 (mailers sent to Kathleen K. in 2014).  Finally, the Government introduced United States Postal Service records for Permit 78, which Seko used to send out mailers, to establish that she continued doing

so on behalf of "Trust Funding" as late as April 2015.  Gov't Exhs. 40-4, 400-1.

Defendant's assertion that the mailer Daniel T. received was not the type of mailer she ever sent on behalf of the fraudulent scheme is also contradicted by the evidence.  This mailer, Gov't Exh. 6-9, was the exact same type of mailer found at Seko Direct Marketing when the business was searched in June 2014, *see, e.g.,* Gov't Exhs. 34-3 through 34-11, 34-23.

Given this evidence, the jury was well within reason to conclude, as it apparently did, that Defendant Seko designed and sent the mailer that reached Daniel T.  The Court will therefore deny Defendant's motion for acquittal on Count Six.

4. Counts Nine through Eleven (Victim Archie D.)

Defendant's final argument is that she should not be held liable for three mailings sent to victim Archie D. in April 2014. Def.'s Mot., ¶ 33.  She again contends that her services for the conspiracy were terminated in January 2014.  *Id.*  Seko also asserts a new argument with respect to Count Nine: her conviction cannot possibly stand because Archie D. testified that the mailer he received was green.  *Id.*  Moreover, Seko re-raises an earlier objection that she made during trial.  She claims that her conviction on this count cannot stand because the Government failed to produce the actual mailer, in direct violation of the Best Evidence Rule.  *Id.*

For all the reasons explained above, Defendant Seko's argument that she stopped working for the conspiracy in January 2014 is belied by the evidence at the trial. Her motion for judgment of acquittal based on that argument fails for the same reason with respect to Counts Nine, Ten, and Eleven.

In addition, there was sufficient evidence at trial from which the jury could have found Defendant Seko guilty of mail fraud based upon the mailers sent in Counts Nine, Ten, and Eleven. For example, one of the victims, Kathleen K., was found in Seko's computer in June 2014 and received both a green and a pink version of the exact same mailer from Seko. *See* Gov't Exhs. 33-54, 87-1 (pink mailer), 87-5 (green mailer). Thus, the jury was entitled to conclude that the color of the mailer Archie D. received raised no doubts about Seko's criminal liability for Count Nine.

Finally, Defendant Seko's renewed objection under the Best Evidence Rule, Fed. R. Evid. 1002, is at best unavailing, and at worst disingenuous. When Defendant originally raised this objection at trial, the Court convened a bench conference to announce its ruling, during which the following discussion took place:

> THE COURT: I'm going to take up the best evidence rule. Does the defense have any problem with the way the Government proposed to put their evidence on regarding the best evidence rule?
>
> MR. FALLGATTER: The way it was done yesterday seemed fairly benign. Except for the hearsay about the content of the flyer. I apologize, Your Honor, we were hustling and –

THE COURT:  All right.  Thank you.

MR. FALLGATTER:  That was my only objection yesterday was the -- through the hearsay about the content of the form and reciting from memory, which respectfully we think is an inaccurate recitation.

THE COURT:  As best to the form, Mr. Faulconer, you're just going to ask the witness did they receive the form and what was it about, is that it?

MR. FAULCONER:  Yes, your Honor.  As we've said in our pleading whether they received the form; potentially, whether they remember the color of it; the fact that it offered some sort of mortgage modification assistance; and that it had a toll-free number to explain what they then ended up doing subsequent to that.

THE COURT:  Okay.  Is that agreeable with defense counsel?

MR. FALLGATTER:  It is.  And I suggest that leading questions are perfectly appropriate for the defense just to kind of get past that important area.

THE COURT:  Okay.  So getting it over with.  Okay.  Yeah.  I'll buy that.  It's a good case.  U.S. v. Alexander at 326 F.2d 736 that deals with the issue.

At that time, the parties—and Defendant Seko's counsel in particular—all agreed that the victims could testify to basic facts about the mailers, including that they received a mailer with a toll-free number promising mortgage modification assistance and that they called the number to request that assistance.  As a result of the parties' agreement, the Court reasonably inferred that Seko's objection had been withdrawn.

Nevertheless, because the Court had been prepared to rule on Seko's objection, it offered the case of *United States v.*

*Alexander*, 362 F.2d 736 (4th Cir. 1964) as controlling precedent.
That case makes clear that the Best Evidence Rule "only applies to
the terms of the document, and not to any other facts about the
document," such as its existence or identity. 362 F.2d at 740. To
put it differently, the Rule is meant to "exclude testimony designed
to establish the [material] terms of the document, and requires the
document's production instead, but does not apply to exclude
testimony which concerns the document without aiming to establish
its terms." *Id.* So long as witnesses are not attempting to testify
about "the detailed marks of peculiarity," then, the Best Evidence
Rule does not prevent a witness from testifying "to the document as
a whole regarded as an ordinary describable thing." *Id.* at 742.
Here, the Best Evidence Rule would not bar the Government's
witnesses from testifying "to the document [they received] as a
whole," *i.e.*, a mailer about possible mortgage modification
assistance with a toll-free number to call.

Even assuming that the Best Evidence Rule does apply to
this testimony, it would still be admissible under Federal Rule of
Evidence 1004(a). Rule 1004(a) provides that "[a]n original is not
required and other evidence of the content of a writing . . . is
admissible if: (a) all the originals are lost or destroyed, and not
by the proponent acting in bad faith." Here, Defendant Seko has
never alleged that Archie D. or the Government destroyed the mailer
in bad faith. Moreover, Seko *affirmatively agreed* to allow the

Government's witnesses to testify very generally about the mailers,
such as the fact that they received an initial mailer, that the
mailer promised mortgage modification assistance, and that they
called the toll-free number listed on the mailer for that
assistance. This type of testimony was perfectly admissible under
Rule 1004(a).

In any event, having withdrawn her objection at trial by
virtue of her agreement, Defendant Seko cannot now assert that such
testimony was admitted in error. Accordingly, the Court denies
Seko's motion for a judgment of acquittal on Counts Nine, Ten, and
Eleven.

B.    Motion for New Trial

    i.    *Testimony from Postal Inspector Gonzalez about April*
        *2013 Caution*

The thrust of Defendant's argument in favor of a new trial
centers around the alleged inadmissibility of the same testimony she
has now challenged before this Court at least four times: Postal
Inspector Gonzalez's warnings to her in early 2013 about continuing
to do business with Araya. Def.'s Mot., ¶¶ 2-3. Seko asserts that
this testimony was inadmissible hearsay and that the Government
should not have been permitted to argue that these warnings to Seko
established her knowledge of the fraudulent scheme. *Id.*, ¶ 4.
Defendant again attempts to divine the jury's thinking,[8] *id.*, ¶ 5,

---

[8] For the same reasons the Court noted above, it will decline defense counsel's
invitation to impermissibly speculate as to the reasoning behind the jury's
general verdict.

argues (erroneously) that the April 2013 caution was the
Government's only proof of Defendant's knowledge of the conspiracy's
fraudulent goals,[9] *id.*, ¶¶ 5, 7, and asserts that, in any event, she
stopped working with Araya in April 2013,[10] *id.*, ¶ 11.  Furthermore,
Defendant accuses the Government of allowing Inspector Gonzalez to
render a legal opinion on the ultimate issue of Seko's guilt, which
she argues no limiting instruction could cure, as well as failing to
provide any case law or Rules of Evidence to support the admission
of such testimony.  *Id.*, ¶¶ 12, 19, 22.  Finally, as a last-ditch
effort, Defendant claims that the admission of such testimony was
"particularly prejudicial," which this Court interprets as an
argument under Federal Rule of Evidence 403.  *Id.*, ¶ 23.  Having
assessed each of these claims, it is clear that Defendant
misunderstands blackletter law.

      Federal Rule of Evidence 801 defines hearsay as an out-of-
court statement that "a party offers in evidence to prove the truth
of the matter asserted."  By negative inference, then, any out-of-
court statement that is being offered to prove something other than
the truth is simply *not* hearsay.  While Rule 802 places an absolute
bar on the admission of hearsay, unless an exception (*e.g.*, Rule
801(d)) or exclusion (*e.g.,* Rules 803 and 804) applies, any
statement that does not meet the definition of hearsay is not
similarly barred.  For that reason, no exceptions or exclusions are

---

[9] The Court addressed this argument at length in Section II.A.i above.
[10] Again, the Court addressed this argument at length in Section II.A.i above.

required.  Rule 801's definition of hearsay goes to the heart of
Defendant's continued protestations in this case.  But this nuance
seems lost on her.

Here, the Government offered Postal Inspector Gonzalez's
warnings to Seko in April 2013 not to prove the truth of any matters
asserted therein, but rather to show the effect that those
statements had on Defendant Seko, namely her state of mind.  By
definition, such statements are not hearsay under Rule 801.  Because
they are not hearsay, no exclusion or exception is required in order
to admit these statements at trial.

Rather than relying exclusively upon the Federal Rules of
Evidence in its two prior Memorandum Opinions, however, the Court
also previously cited two cases for the proposition that statements
offered to prove the effect of the statement on the listener, as
well as statements offered to prove a person's state of mind, are
not hearsay and are, therefore, admissible.  *See United States v.
Martin*, --- F. App'x ---, 2016 WL 4928669, at *5 (4th Cir. Sept. 16,
2016); United States v. Leake, 642 F.2d 715, 720 (4th Cir. 1981).
The Government also identified two additional cases for the more
precise proposition that where a statement "is offered to prove
knowledge" and the "listener's state of mind," the statement is not
hearsay and is admissible.  *See United States v. Guerrero-Damian*,
241 F. App'x 171, 173 (4th Cir. 2007); *see also United States v.
Safari*, 849 F.2d 891, 894 (4th Cir. 1988).  Rather than accepting

these cases as blackletter law in the Fourth Circuit, or offering
controlling precedent that demonstrates that these cases have since
been overruled, Defendant instead repeatedly claims that they are
inapposite because the statements at issue were being offered by the
defendants. However, no such distinction exists under Rule 801.
Fed. R. Evid. 801 (defining hearsay as an out-of-court statement
that "a *party* offers to prove the truth of the matter asserted")
(emphasis added).

In addition, Defendant has repeatedly protested that
Inspector Gonzalez's statements were "meaningless to prove Seko's
knowledge" unless they were offered for their truth. Def.'s Mot., ¶
10. However, as the Government persuasively points out, "knowledge"
in the legal sense "has nothing to do with truth or falsity; rather,
it is a question of a defendant's own mental state." Gov't Opp.
[Dkt. 577] at 16. Because the legal elements of conspiracy and
fraud require a defendant to act "knowingly," the Court defined the
term as a defendant being "conscious and aware of his or her action
or omission, realiz[ing] what he or she was doing or what was
happening around him or her, and . . . not act[ing] because of
ignorance, mistake, or accident."[11] Jury Instructions at 50

---

[11] In her reply brief, Defendant also goes to great lengths to convince this Court
that "state of mind" and "knowledge" are two terms with completely different legal
meanings. Def.'s Repl. [Dkt. 581] at 1-3. Defendant contends that "state of
mind" refers exclusively to one's motive, while "knowledge" refers to one's
understanding of a fact. Having reviewed the definitions Defendant provided, the
Court finds her arguments unpersuasive. Not only do they defy common sense, but
also they contradict the definitions themselves. Seko's preferred definition of
"knowledge," for example, defines the term as "a *state of mind* in which a person
has no substantial doubt about the existence of a fact," a point that Defendant

22

(Instruction 34: "Knowingly" – Defined).  Thus, contrary to
Defendant's assertions, even though Inspector Gonzalez's statements
were not being offered to prove the truth of the matters asserted,
such statements were still useful to the jury in order to assess
Seko's state of mind, including her knowledge, after the April 2013
caution took place.

Though not stated directly in Defendant Seko's motion, the
remainder of her arguments with regards to Postal Inspector
Gonzalez's testimony can be fairly categorized as allegations of
unfair prejudice under Rule 403.  Defendant implies that this
testimony was too prejudicial for the jury to hear, as the jury was
likely to substitute the Postal Inspectors' assessment of whether
fraud had occurred for their own.  Def.'s Mot., ¶ 43.  In fact,
Defendant speculates that this Court's limiting instruction actually
*invited* the jury to consider Inspector Gonzalez's assessment,
including whether or not they agreed with it.  *Id.*, ¶¶ 41, 43.  In
addition, Defendant contends that the Government ignored this
limiting instruction, and the Court's earlier evidentiary rulings,
when it connected Seko's state of mind to her knowledge of the
charged offenses during its closing rebuttal.  Def.'s Repl. [Dkt.
581] at 13-16.

Far from inviting the jury to consider Postal Inspector
Gonzalez's assessment of whether fraud had occurred, however, the

_____

ignores.  *Id.* at 2 (emphasis added).  As this definition suggests, knowledge is an
example of a state of mind, and not a wholly different and unrelated concept.

Court explicitly instructed the jury *not* to substitute Inspector
Gonzalez's assessment for their own independent judgment at least
twice during trial, once during her testimony and again prior to the
start of jury deliberations.  Defendant's attempt to have this Court
provide a curative instruction was entirely unnecessary, as
Inspector Gonzalez's testimony had been properly admitted.
Moreover, the Government's case-in-chief carefully abided by this
Court's evidentiary rulings, which admitted Inspector Gonzalez's
testimony back in December 2016 "to show [the statements'] effect on
the Defendant and to prove her *knowledge* of the fraudulent
objectives of the conspiracy."  Memorandum Opinion [Dkt. 420] at 10
(emphasis added).  For example, the Government never asked Inspector
Gonzalez to testify as to the ultimate question of Defendant Seko's
guilt.  The Government also never argued that the jury should
shortcut their deliberations in favor of rubberstamping Inspector
Gonzalez's assessment that a fraudulent conspiracy was underway.
Accordingly, the Court finds that Defendant has failed to
demonstrate any unfair prejudice that resulted from Inspector
Gonzalez's testimony or the Government's arguments at trial, much
less the type of prejudice required to justify a new trial.

   ii. *Additional Grounds for Relief: Jury Foreman's
     Signature on Indictment, "Materiality" Jury
     Instruction, Admission of Failure to File Tax Returns,
     and Admission of the Government's 34-Series Exhibits*

Defendant's motion for a new trial also includes four additional grounds for relief, which she supports with only one or two brief sentences each.

First, Defendant argues that it was prejudicial error for the Court to send the indictment to the jury with the signature of the grand jury foreman. Def.'s Mot., ¶ 45. Not surprisingly, she provides no case law to support this proposition. *Id.* Having found none, the Court denies her motion for a new trial based on this alleged error.[12]

Second, Defendant claims that the Court should have given the jury her requested instruction that the phrase, "We have been trying to reach you without success," was immaterial. Def.'s Mot., ¶ 46. In fact, Defendant now claims that such a statement is immaterial "as a matter of law," despite citing zero case law in support of this proposition. Def.'s Repl. [Dkt. 581] at 17–18. The Court previously declined to issue this instruction, as doing so would have improperly invaded the province of the jury. After all, several victims, including Trivenee S., testified at trial that the statement was material to their decision to call the toll-free number on the mailer. Thus, it was up to the jury to decide whether to credit those witnesses' testimony as to the statement's materiality. For that reason, the Court denies Defendant's request for a new trial.

---

[12] The Court also notes that it properly instructed the jury that the indictment is not evidence of any kind. Jury Instructions at 10 (Instruction 8).

Third, Defendant re-raises her objection to the introduction of her failure to file tax returns during 2012, 2013, and 2014, which this Court previously deemed admissible. Def.'s Mot., ¶ 47; Memorandum Opinion [Dkt. 529] at 8-9. Defendant claims that the Court should have required the Government to prove that Seko had to file at all, given her modest net income, and accuses the Court of allowing the evidence, even though the Government seized all of her records in June 2014 and prevented her from using those records to file her 2013 and 2014 tax returns. *Id.* In making this argument, Defendant utterly fails to acknowledge that she later stipulated to the evidence's admittance at trial, including the relevant federal income tax filing thresholds. [Dkt. 551.] Aside from this oversight, Defendant's argument is also factually inaccurate. Even if the Government's seizure of her business records in June 2014 had made it impossible for Seko to file, as she now claims, such an action would have impacted, at most, her 2014 return, as her 2013 return would already have been due to the Internal Revenue Service two months prior. At any rate, the Court continues to find Seko's failure to file her tax returns admissible. It is relevant evidence to prove Defendant's knowledge of the charged crimes, *United States v. Siegel*, 536 F.3d 306, 317-18 (4th Cir. 2008), "necessary to prove an element of the charged crime," *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997), and not otherwise subject to exclusion under Rule 403, *United States v.*

*Lighty*, 616 F.3d 321, 352 (4th Cir. 2010). Thus, the Court denies Defendant's request for a new trial based upon the admission of the agreed-upon stipulation that Seko failed to file tax returns in 2012, 2013, and 2014.

Fourth, Defendant re-raises her objection to the introduction of documents found during the search of her business, Seko Direct Marketing, in June 2014. Def.'s Mot., ¶ 48. In particular, Defendant objects to certain handwritten notes included in Government Exhibit 34-57. *Id.* The Court again finds that the Government's 34-Series were properly admitted under Fourth Circuit case law "to show the circumstantial relationship of the [defendant] to the scene, the contraband, or other parties," as well as on the ground that they were admissions or adoptive admissions by a party opponent under Federal Rule of Evidence 801(d)(2)(B). *United States v. Merritt*, 145 F.3d 1327, 1998 WL 196614, at *1 (4th Cir. 1998) (unpublished) (quoting *United States v. Marino*, 658 F.2d 1120, 1124 (6th Cir. 1981)).

### iii. *"Deliberate Ignorance" Jury Instruction*

Finally, Defendant filed a Notice of Adoption of Henderson's Second Motion for New Trial. [Dkt. 576.] Defendant Henderson's motion focuses on a particular jury instruction, "Instruction 37 - Deliberate Ignorance – Explained." [Dkt. 575.] Henderson argues that this instruction was overly broad and invited too much juror speculation. [*Id.* at 1.] The remainder of

Henderson's motion focuses on the lack of evidence admitted at trial to establish his own deliberate ignorance. [*Id.*] In Seko's two-sentence Notice of Adoption, she fails to make any specific arguments about the Court's use of the deliberate ignorance instruction as it applied to her. [Dkt. 576.] While this failure to meet the standard for granting a new trial under Rule 33 is problematic in its own right, it is far from the only reason for the Court to deny her request.

As a preliminary matter, the Court must address a different, more basic issue with Seko's motion, which is ultimately dispositive of her attempt to adopt Henderson's motion. Seko's Notice of Adoption—filed on May 8, 2017—is untimely under Federal Rule of Criminal Procedure 33. Rule 33 states that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). The jury returned its verdict in the instant case on April 21, 2017; thus, the deadline for filing Rule 33 motions was on or before May 5, 2017. Because Seko filed her Notice of Adoption three days after this deadline, her motion is untimely. Furthermore, Seko's attempt to title this motion as a "Notice of Adoption," rather than a "Motion to Adopt," under Rule 33 does not excuse this tardiness. This is especially true where, as here, the motion Seko seeks to adopt is myopically focused on factual allegations and arguments unique to her co-

defendant.  Accordingly, the Court denies as untimely Seko's request for a new trial based on the Court's use of the deliberate ignorance instruction.

*       *       *

Having reviewed all of the evidence in this case, as well as each of Defendant's arguments in favor of a new trial, the Court finds that there is not a legitimate basis for disturbing the jury's verdict.  Accordingly, the Court denies Defendant's motion for a new trial in its entirety.

### III.    Conclusion

For the foregoing reasons, the Court will deny Defendant's motion for a judgment of acquittal.  The Court will also deny Seko's motion for a new trial.

An appropriate Order will issue.

/s/

| | |
|---|---|
| May 30, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |